**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DONALD MORAN**                                                                  **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION NO.:  3:16CV15-LRA**

**CENTURION, DR. ROLAND ABANGAN,
and OLLIE LITTLE, HEALTH SERVICES
ADMINISTRATOR**                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter was brought pursuant to 42 U.S.C. § 1983 by a prisoner Plaintiff, Donald

Moran, contesting the conditions of his confinement at the East Mississippi Correctional Facility

– specifically, the medical care he received from the Defendants.  The case came before the

Court on the Defendants' Motions to Dismiss [23, 25, and 27].  During an Omnibus Hearing held

on December 7, 2016, the parties executed a Consent to the Exercise of Authority by a United

States Magistrate Judge [37], and the case was referred to the undersigned by an Order signed by

District Judge Henry T. Wingate and entered on January 5, 2017 [38].  Having reviewed Moran's

Complaint, as supplemented by his responses to the Court's request for additional information,

his grievance form submitted as part of the Administrative Remedy Program, his Reply

Memorandum to the Motions to Dismiss, his medical records, and the relevant legal authorities,

the Court concludes that the Plaintiff's claims should be dismissed.

In his Complaint, which was filed on January 13, 2016, Moran described an incident that

took place shortly after he was arrested in April, 2010, while he was housed at the Harrison

County Jail.  When it came time for his cell to be opened for his one hour of recreation, Moran

went to the top tier of the jail and attempted suicide by jumping and breaking his ankles.  After

his conviction, Moran was sent to the East Mississippi Correctional Facility (EMCF), which, at

that time, was run by G.E.O.  Medical services were provided by Health Assurance.  His

complaints regarding his medical care at EMCF follow:

> Upon arriving I've put in at least six (6) sick calls approximately within the periods of January 2012 – September, 2012, before I was ever seen.  I saw Dr. Edwards and he did nothing to help me.  I saw him twice more by the end of the year, then he was gone.  By the first of the year they had a new doctor, Dr. Cruel.
>
> When I saw him, due to he felt surgery was needed on my feet and ankles. He stated that M.D.O.C. had to approve the surgery.  I saw Dr. Cruel at least twice more before he did the surgery on the 22nd day of November, 2013.  I saw him thrice more for follow up before he quit working here.  Then a Dr. Lewis was hired, and I saw him thrice and a week before he left I saw him and told him about the pain and he told me that my feet and ankles are still messed up and need further surgery.
>
> The medical company Centurion took over and I was told that they will not have a foot Dr. or prescribing pain management due to no doctor to handle it. I've been trying to get the finished treatment for my feet and ankles ever since Dr. Lewis left.  I've filed numerous Administrative Remedy Program grievances pertaining to this issue (A.R.P.'s enclosed).
>
> To this day my feet hurt to the point that walking and working is at times hindered completely.  My ankles lock up in which I can't get out of bed cause I can't put any pressure on them.

In addition, Moran attached to his Complaint several documents related to the Requests he

submitted through the Administrative Remedy Program.  After Moran filed his Complaint, the

Court  required him to supplement his Complaint with a statement specifically stating how each

of the three Defendants violated his constitutional rights.  With regard to Centurion, Moran

stated:

> Plaintiff was called to the E.M.C.F. Medical dept. due to severe pain in his feet from a prior incident.  Upon arriving and seeing Dr. Abangan, he asked about seeing a foot doctor and he put [me] on a pain management routine.  Dr. Abangan stated that since Centurion took over in July 2015, they stopped having a foot doctor and pain management; and that as long as they are over EMCF Medical Dept there will not be any.

Defendant Centurion Healthcare is forcing Plaintiff to suffer severe pain and at times can't get out of bed due to pain in feet. This has caused Plaintiff [to] not be able to attain a job and be active within the facility as other offenders. This is Cruel and Unusual punishment by not obtaining proper medical care for Plaintiff's ailment which is known by Medical Dept.

With regard to Abangan and Little, Moran stated:

Plaintiff seen Dr. Abangan on 8-4-14 about his severe pain in his feet that he was having after his surgery that was done on 11-22-13. Dr. Abangan told him that he will not receive anything for the pain.

Plaintiff went back to Dr. Abangan on 10-8-14 about the same medical problem and he was still refused pain medications. On 10-22-15 Plaintiff was referred back to Dr. Abangan by H.S.A. Ollie Little to only receive the same response – nothing. To this day Plaintiff is suffering severe pain in both feet, in which, causes him difficulty in walking.

Moran added the following information about Ollie Little:

Plaintiff alleges that H.S.A. Ollie Little should be and to his knowledge is responsible for what his employees (medical staff) do in caring for patients. Mr. Little referred Plaintiff to see Dr. Abangan about receiving pain medication that he never received. That was on 10-22-15.

On 11-24-15 Mr. Little requested X-rays on my feet. The X-rays were done and Plaintiff has never heard anything else about them. On 10-8-14, Mr. Little said that he cannot dictate which, if any, medications the Doctor orders.

Mr. Little said that Plaintiff's medical records states that Plaintiff was seen by Dr. Lewis on 1-28-15 and that Dr. Lewis would get back with him (Plaintiff). Dr. Lewis had quit and never spoke back with him. Plaintiff is still experiencing severe pain and H.S.A. Ollie Little denies that he has any authority to intervene to remedy the matter.

In his argument in reply to the Defendants' Motions, Moran called the Court's attention to the Eighth Amendment standard for determining whether a prisoner has a serious medical need that prison officials disregarded. In so doing, Moran argued that several factors must be considered, including "(1) whether a reasonable doctor or patient would consider the need worthy of comment or treatment; (2) whether the condition significantly affects daily activities; and (3) whether one has chronic and serious pain." *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003). Moran also recognized, correctly, that to prove deliberate indifference, a prisoner must

show that prison officials knew about his serious need, but failed to respond reasonably to it.  He

concluded:

> The facts of this case not only meets, but proves both prongs of this rule.
> The record shows that previous care provider before Centurion diagnosed,
> ordered and performed treatment as well as surgery in an attempt to correct
> Plaintiff's serious medical needs on my feet.  With the understanding that more
> treatment and surgery may be needed in the future.  But in midstream of
> treatment, care provider was changed from Health Assurance to present provider
> Centurion.  Since the change all that has been done is X-rays and a supposed
> referral to M.D.O.C. to refer me to a specialist when in reality it is up to
> defendants to schedule and deliver me to such appointment.  I also desperately
> need orthopedic shoes which I have not received and no pain management control
> whatsoever.

After the Defendants filed their Motions to Dismiss under Rule 12(b)(6), the Court held

an Omnibus Hearing to give Moran an opportunity to give testimony regarding his

claims.  At that hearing, Moran testified that he began receiving pain medication in the

form of Neurontin from another staff member, Nurse Hobson, in November, 2016.  He

also informed the Court that he had been issued orthopedic shoes.

Moran had received the Motions and responded to them by the time he testified; thus, he

had an opportunity to refute the Defendants' substantive claims.  The Court has reviewed

Moran's testimony, as well as medical records that the Defendants served on Moran and

submitted during the Omnibus Hearing.  In the appropriate circumstance, the Court can convert a

12(b)(6) motion to dismiss to a motion for summary judgment.  *Dillon v. Rogers*, 596 F.3d 260,

272 (5th Cir. 2010); *Norman v. McCotter*, 765 F.2d 504, 507 (5th Cir. 1985) (where motion to

dismiss is converted to motion for summary judgment, prisoner must be given an opportunity to

controvert factual material).  Having reviewed extraneous material presented by both sides, the

Court will consider these Motions as Motions for Summary Judgment.

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. St. Board of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).  The burden then shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). Where there is no disputed factual issue regarding the evidence of multiple examinations and treatment, a prisoner's legal conclusion that his allegations meet the deliberate indifference standard does not preclude the entry of summary judgment against him.  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  In conducting this analysis, however, the Court must remain mindful that, in the context of a summary judgment motion, all evidence produced by the nonmovant is taken as true, all inferences are resolved in favor of the nonmovant, and, because Moran is a pro se litigant, his pleadings must be held to a less stringent standard than those drafted by lawyers.  *Sama v. Hannigan*, 669 F.3d 585, 599 (5th Cir. 2012).

In bringing this suit under 42 U.S.C. § 1983, Moran argues that EMCF's medical department's treatment of his condition demonstrates deliberate indifference to his serious medical needs, thereby violating his constitutional right to be free from cruel and unusual punishment.  Section 1983 prohibits the deprivation of constitutional rights under color of state law.  As the United States Supreme Court has taught, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment applies to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment, and it prohibits the infliction of cruel and unusual punishment for crimes.  *Wilson v.*

*Seiter*, 501 U.S. 294, 296-97 (1991).  It requires prison officials to provide humane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   The amendment's protection covers deprivations that are not specifically a part of a prison sentence, but are suffered as the result of imprisonment.  *Id.* at 297 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  Any punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society'" is repugnant to the Eighth Amendment.  *Estelle*, 429 at 103 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  Those principles, along with the prisoner's forced reliance on prison authorities to treat his medical needs, "establish the government's obligation to provide medical care for those whom it is punishing by incarceration."  *Estelle*, 429 U.S. at 103.

When a complaint involves conditions that are an element of confinement, as opposed to those that are a part of punishment, an inquiry must be made into the state of mind of the defendant prison officials.  *Wilson*, 501 U.S. at 300-02.  For such a claim to be viable, the official must exhibit "deliberate indifference" to the welfare of the inmate.  *Id.*, at 303.  The elements of proof in a case involving conditions of confinement are twofold and include: (1) an objective component, under which the inmate must prove his exposure to a harm or injury that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate must prove that the prison authorities' current conduct evidences a deliberate indifference to that exposure.  *Helling*, 509 U.S. at 35-36.

In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834. Under the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id*. at 837.  Of course, if a risk is sufficiently obvious, the official may be held, under

the concept of constructive knowledge, to have been aware of the risk of harm.  *Id*. at 840.  In

sum:

> an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id*. at 842.  In defense, prison officials may show that they did not know of the indications of

substantial danger and were, therefore, unaware of the danger, or that they knew the indications

but believed that the risk involved was "insubstantial or nonexistent," or that they "responded

reasonably to the risk, even if the harm ultimately was not adverted."  *Id*. at 844-45.

The burden of showing deliberate indifference is a high one, and difficult to meet.

*Gobert,* 463 F.3d at 346.  A plaintiff can meet that burden, however, "by showing that an official

'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

any similar conduct that would clearly evince a wanton disregard for any serious medical

needs.'"  *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017)

(quoting *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)).  Mere negligence cannot support a

claim of deliberate indifference; nor can a prisoner's disagreement with his treatment support a

constitutional claim.  *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).

In this case, there does not appear to be any factual dispute among the parties; the issue is

whether, based upon the medical treatment that all agree was actually provided to Moran, EMCF

medical staffers were deliberately indifferent to Moran's serious medical need.  Because the

parties do not dispute the evidence that was provided from both Moran and EMCF on his

medical treatment, and because some of the evidence that Moran submitted preceded the records

provided by EMCF, the Court has combined that evidence and summarized it, as follows:

8/6/2014       Moran submits a Request for Administrative Remedy, complaining about pain in his feet and ankles and asking to be put on Neurontin "1,600 mg's a day like I was getting in the free world from my pain management Dr. Wu on the coast and Dr. Abangan told me he will not give me anything for the pain in my feet and ankles."  ([1], p. 19).

10/2014       Ollie Little replied, "I cannot dictate which medications Dr. Abangan orders.  At this step there is no other relief I can provide."  Moran indicated that he was not satisfied with the response and wanted to proceed with Step Two, writing, "I do have nerve damage in my feet I know because the foot doctor-Dr. Cruel told me so.  And y'all have the records on my feet!"

2/10/2015       First Step Response Form states, "Records indicate 1-28-15 you were seen by Dr. Lewis and he ordered X-rays.  He will follow up and base his decisions on the results and his follow-up exam.  Please remain patient while Dr. Lewis determines your needs."  Moran expressed his dissatisfaction with the response and indicated his intent to proceed to Step Two, stating, "I also requested to get some special shoes for my feet."

4/15/2015       Clinic visit.  Edema in both feet.  Dispensed shoes; put Moran on foot exercise program and notified him to notify medical if pain persists or worsens.

8/25/2015       Clinic visit.  Requests pain management and high top shoes to support ankles.  X-ray ordered, with follow-up appointment with MD to be scheduled if needed.

8/26/2015       X-ray results for both ankles:  "There is no radiographic evidence of acute fracture.  There are no gross lytic or blastic lesions in the bones.  There is no dislocation.  There is an old healed fracture of the calcaneus."

8/27/2015       Clinic visit.  Reporting both feet hurt; had old fracture.

9/4/2015       Clinic visit.  Requests orthopedic shoes because of foot pain; swelling noted on both feet; referred to MD for evaluation.

9/21/2015       Mental Health visit.  Told that Neurontin would not be dispensed through the mental health department; admits he takes it for pain in his foot and ankle.

10/22/2015       First Step Response states, "I will refer you to Dr. Abangan for pain treatment.  As for the medication changes by FNP Dunn, I cannot interfere with the orders of a co-provider."  Moran responded that Dunn had stopped his Neurontin, a drug that was working for his mood disorder.  The Second Step Response noted that Neurontin was ordered and dispense on 9-21-15.  [1], p. 16.

10/22/2015       EMCF submits Specialty Care Consultation Request to MDOC.

10/27/2015      Mental Health visit.  Complains about stopping his Neurontin because he has a lot of pain.  Another medication is increased.

11/3/2015       Clinic visit.  Complains of pain over the top of both feet and ankle.  No deformity noted.  Ibuprofen given.

11/8/2015       Moran asked "to get medical treatment on my feet by a foot Dr. that's good and to help me overcome some of the pain I have in my feet.  This is an ongoing problem I have.  There's a lot of pain and suffering I go through with my feet.  I just want to get 'em fixed."

11/11/2015      X-rays of feet.  "This exam is overall little changed compared with prior."

11/24/2015      In a First Step Response Form to the 11/8 Request, Defendant Little said, "We requested a consultation for you from MDOC which is why we needed to do another X-ray.  We are awaiting the final decision of MDOC as to how to move forward."  On 12/1, Moran indicated that he wanted to proceed to the second step, unless the grievance could be held to give the medical staff a chance to provide the appropriate treatment.

12/1/2015       Pulmonary Chronic Care Clinic visit.  Complains of feet and ankles hurting all of the time.  Edema noted in both ankles.

12/2/2015       Chronic Care follow-up visit.  Told that new X-rays little changed from those taken on 8/26/2015.

12/2/2015       The Second Step Response to the 11/8 Request from Dr. Abangan stated, "We have sent out to MDOC a request for evaluation but I have not received any reply yet."

12/14/2015      Moran submitted a Request, this time addressed to MDOC, that stated:

        On or about 11-22-13, Dr. Cruel did surgery on both of my feet due to jumping off the top tier.  He quitted for Health Assurance after seeing him only three (3) times.  A Dr. Lewis was hired and I seen him three times and he notify me that my feet were still damage.

        He soon quitted and then Centorian took over E.M.C.F.'s Medical Dept.  I have sent in several Medical Request Forms (M.R.F.) complaining about the severe pain in my feet.  How it gets hard to walk cause they will lock-up so I can't even step on them.

        I was given the run-around for so long, that on 11-8-15 I filed an A.R.P. on E.M.C.F.'s Medical Dept. (A.R.P. Enclosed)  Their first response was that they contacted you for a consultation and that's why they needed to take X-rays.  Also that they are waiting Your final decision on what to do.  (First Step Enclosed.)

I responded back and their Second Step Response was that they sent out to MDOC a request for evaluation but I (Dr. Abangan) have not received any reply yet. I have waited twelve (12) days for a response.

Moran asked for "appropriate medical treatment" and orthopedic shoes.

12/18/2015     MDOC's ARP Coordinator responded, as follows: "I am in receipt of your recent request for Administrative Remedy concerning your request for the treatment of your feet. Medical is waiting for MDOC to respond to their request to further treat you."

Less than a month later, Moran filed his Complaint in this case.

2/8/2016     Orthopedic shoes dispensed.

3/21/2016     Clinic visit. Complains of foot pain. Ibuprofen given.

8/9/2016     Clinic visit. Complains of bilateral foot pain; locking up; difficulty walking at times. Motrin and Ibuprofen given.

8/17/2016     Clinic visit. Examined by Dr. Abangan. Complains of foot pain since May 9, 2010. Both feet examined, no inflammatory change. Ibuprofen given.

8/19/2016     Clinic visit. Complains of pain in feet and ankles. Admits Dr. Abangan saw him and prescribed Motrin and ibuprofen. Instructed to return if no relief or condition worsens.

8/24/2016     Mental Health Visit. Wants to see psych nurse "about a mental issue I'm having about my feet hurting."

8/29/2016     Clinic visit. Complains feet hurt worse than before surgery. No swelling or discoloration noted. Referred to MD; told to return if no relief or condition worsens.

9/6/2016     Clinic visit. Complains feet locking up and having burning sensation. No swelling or discoloration noted. Referred to MD.

9/7/2016     Clinic visit. Foot pain. "IM [inmate] said he does not want anything he already got ibuprofen."

9/19/2016     Clinic visit. Foot pain. Motrin expired; feet constantly ache. No swelling noted. Ibuprofen given.

9/28/2016     Clinic visit. Foot pain. Continued ibuprofen.

11/2/2016     Clinic visit. Foot pain, rates a 7. Bilateral swelling noted.

Prisoners are entitled to reasonable care; they are not entitled to the "best medical care money can buy." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). They do not have a right to the best treatment available, nor is there a guarantee that his ailment will be successfully treated. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). There is no entitlement to the medical care an inmate believes he should have. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A prisoner cannot support a claim of deliberate indifference by disagreeing with the diagnostic measures or methods of treatment by medical staff. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Likewise, an inmate does not necessarily have a constitutional right to an outside referral or a specialist. *Randle v. Mesrobian*, 165 F.3d 32, 2007 WL 551951, at *3 (7th Cir. 1998) ("Prisons are not required to keep specialists on staff, and inmates have no automatic right to consult with outside physicians."); *Green v. McKaskle*, 788 F. 2d 1116, 1127 (5th Cir. 1986). Moreover, medical records that show that an inmate was examined for his complaint on numerous occasions, assessed, and treated may rebut an inmate's claim of deliberate indifference to serious medical needs. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *McCord v. Maggio*, 910 F2d 1248, 1251 (5th Cir. 1990); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985). Finally, where the record shows that the prisoner was seen by prison medical staff and where his test results were in the normal range, failure to refer him to a specialist is not deliberate indifference. *Corte v. Schaffer*, 24 F.3d 237 (5th Cir. 1994).

In contrast, the facts of Moran's treatment differ dramatically from the facts of *Coleman v. Sweetin*, 745 F.3d 756, 761(5th Cir. 2014). There, the prisoner fell in the shower and suffered with a broken hip for several weeks without treatment from the prison medical staff, despite submitting numerous sick call requests. His initial complaint was severe pain and inability to

11

move his right leg.  After a second fall, he could not stand on the leg. These requests were ignored by the defendant nurse practitioner, except for an x-ray that was taken but misread by a physician's assistant as showing only arthritis.  Two prison officials visited the prisoner while he was, essentially, bedridden and forced to defecate in a bowl, but did not intervene on his behalf. The prisoner wrote sick call request slips daily for 20-25 days, all of which were disregarded.  It was not until a second x-ray revealed the fracture that the nurse apologized and sent the prisoner, unmedicated, 178 miles on a rough and bumpy road for treatment.  The prisoner finally underwent hip surgery, during which four pins were inserted.  At the time that the prisoner testified in district court, he continued to suffer from pain and depression.  *Id*.  Under these circumstances, the Fifth Circuit held that ignoring the prisoner's complaints and pleas for help "raise the possibility" that the nurse and the prison officials were deliberately indifferent.  *Id*. at 765-66.

Here, the undisputed records show that Moran complained of the pain in his feet on numerous occasions; however, they also show that he was treated for each complaint.  X-rays were taken of his feet twice, and, even though several examinations revealed that his feet were swollen, neither x-ray showed a bone abnormality that could be treated.  Dr. Abangan requested a referral to a foot specialist, but that referral had to be made by MDOC.  There is no explanation for why the referral had not been approved.  Moran has not shown that he suffered serious harm from the treatment at EMCF; at most, he was not given what he considered adequate treatment for pain.  However, by the time of the Omnibus Hearing, at his request, his medication was switched from Ibuprofen to Neurontin.  Moran admitted during the hearing that this medication eased his pain significantly.  Also by the time of the hearing, Moran had been issued the orthopedic shoes he had requested.

12

Having carefully reviewed the record and the applicable law in this case, the Court concludes that the Defendants are entitled to summary judgment.  Even if considered in the context most favorable to Moran, the undisputed facts regarding Moran's treatment cannot establish any issue that had to be resolved through trial.  For all of these reasons, the Court concludes that judgment should be entered in favor of the Defendants, and Moran's claims should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motions to Dismiss filed by the Defendants [23, 25, and 27], construed by the Court as Motions for Summary Judgment, are hereby **GRANTED**, and the Plaintiff's claims against them are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this the 31st day of March, 2017.

_S/ Linda R. Anderson_____
UNITED STATES MAGISTRATE JUDGE